5 Minutes for Rebuttal My name is Michael Strauss. I represent Plaintiff and Appellant Brian Newton in the putative class. The Ninth Circuit has never articulated a test for when state law should become surrogate federal law under the Outer Continental Shelf Lands Act. The District Court applied an outdated test from the Fifth Circuit's 1969 decision in the Continental Oil case. Continental Oil was a maritime case. It involved a collision 50 miles from shore between a foreign flag vessel and an oil platform on the Outer Continental found that there was no need, no necessity for state law to apply to the purely maritime claim. Maritime law provided the right and the remedy for the plaintiff in that case. In fact, he noted that it was unthinking that state law ever would apply in such a circumstance because it had no connection to the state of Louisiana other than being that Louisiana was the adjacent state. Maybe you could just jump up to the statute. Tell me how you interpret it. I've read the Fifth Circuit's decision in the Supreme Court cases and whatnot. I want to know how you interpret 43 U.S.C. section 1333 A1 and 2A. How should it be interpreted from your, I mean, your point, your argument as to why we should interpret it your way. And so tell me what this statute means. In other words, let's forget the Fifth Circuit for now. All right? We have Supreme Court cases. We have the language of the statute. What does the statute mean? The statute and its meaning? I think we have to step back and find out what the statute really, why it exists in the first place. Well, let's start with the language of the statute. We know that and your time is ticking. So could you get to the... Okay. Let's go right to the statute. I asked you directly, what, tell me how you interpret the statute. I think if a state law is directly inconsistent with a federal law, then the state law will not apply. Inconsistency does not mean different. Inconsistency means that the two laws cannot... Okay. What about applicable? Applicable. Applicable needs to be read in the same light as the Fifth Circuit uses, reads it in the Union, Texas test. Aren't you better off just forgetting the Fifth Circuit? Let's start from scratch. A state law is applicable by default. I think that's the reading of the Supreme Court in the Gulf Offshore case. What does that mean? But the Gulf Offshore case really speaks very clearly about looking for a gap in federal law. And that's the problem, right? There's applicable and there's inconsistent, and you seem to want to take those together as though they're one animal. That's what it seems to me. Your briefing seems to me as though we don't do an analysis of each of those separately. I don't think that, under the Supreme Court authority, I don't think that you do look at them separately. I think state law applies by default, and the question is whether the state law is inconsistent with the federal law. So you're reading the word applicable out of the statute. It seems to me you're reading it out. And what do we do then with... That's my first question. Aren't you reading that right out of the statute? And my second question is, what about the language that speaks to... First they said void, and now more recently they've said substantial gap. What about that? Well, substantial gap, that's from the... That's from the continental oil decision, 1969. Well, they've repeated it. Gulf Offshore speaks to it as well, counsel. Okay, well when there's a gap... The question is when there's a gap. And what is a gap? A gap is when a federal law does not speak to an exact situation. If the federal statute allows state regulation, I don't think there's a gap. When the federal statute does not touch a specific issue, there unquestionably is a gap. Right, but here we have this peculiarity where the federal statute is a floor. So it does speak to the question, but it only speaks to it as a floor, right? I mean, that's basically your position about the Fair Labor Statutes Act, as I understand it. So, if we start talking gaps, I mean, you could apply only the federal law and it would govern the question. The only problem is that the federal law doesn't purport to be exclusive. So in other words, are you buying into this gap language or criteria? And if so, how does the FLSA fit it? A gap will exist if a specific statutory provision of the FLSA does not address an issue. And a gap will exist if, for example... But my understanding is that the FLSA does address it. Take the sleeping over problem. It addresses it, but it doesn't address it meaning to be exclusive. Is that wrong? The FLSA as a statute does not address the sleeping time issue. Well, there are regulations that do. The non-binding regulations do. Okay. And my point is... Well, so they do, I mean, according to the federal government, the federal government views the statute as addressing it, right? But only as a floor. As a floor, yes. The federal regulations under the Lands Act shouldn't apply because the Lands Act specifically states that the state law must be inconsistent... All right, but as an interpretation of the federal statute, let's forget whether or not the regulations, qua regulations apply, but they are an interpretation of the statute. Well, then we get back to the Rodrigue issue. The courts cannot create a common law rule in light of a specific statute or provision under the state law that would apply. So you're taking off places that there does have to be a hole somewhere, a gap, or else the federal state law isn't applicable, even though in this instance, it would be applicable in the ordinary language of applicable if this were California, right? Yes, the state law would apply in California, yes. All right, and it's applicable in California. It's applicable in California. Okay, and it's not inconsistent, you would say. So why are we looking for gaps? Why are we looking for necessity or anything else? I mean, why are we applying the word applicable by what it usually means, which is, does it cover the situation and is it an otherwise valid statute? I'm not sure I understand the question. What does applicable mean in English? Applicable means that a person who bring a state law claim... No, in English, ordinary English. Let's forget this context. Isn't the answer to the question that in Rodriguez, the United States Supreme Court said federal law is exclusive in its regulation of this area and state law is adopted only as a surrogate to federal law? I mean, that's their seminal case on point. I don't know how you get around the gaps. In that case, they were talking about a void. They backed off of that and talked about substantial gaps. I guess the question is what is a gap and how big a gap needs to be in order for state law to apply. Well... So you say... Well, go ahead, Judge Chris. It sounds like then that you're embracing the notion, which is what both of my colleagues have tried to ask you about, and it is an important point, so we're trying to press it. Is it your view that we have to in some form recognize that a gap is required before we apply state law or look to state law as a surrogate? We do believe that there has to be a gap. Why? Why do you say that? Because that's what the Supreme Court has said. If you look at the statute, it says, if you go to 1333A-2A, it starts off, to the extent they are applicable, right? The preceding section says that federal law applies, and then it says, to the extent they are applicable and not inconsistent. So in California, in your particular claim, state law is applicable, right? Yes. Okay. Why do we need a gap then? Where does the gap... Well, the statute itself doesn't use the word gap. But Rodriguez did. The United States Supreme Court did. Correct, it did. But did they interpret the word applicable when they were talking about a gap? I don't believe so. I don't believe so. They said, because of its limited function in a federal system, federal law might be inadequate to cope with a full range of legal problems, so the Act supplemented gaps in the federal law with state law. Right? Right. So what does that mean? What should we do with that? I mean, in one sense, California law applies because these are wage and hour claims, basically. Yeah. And California has a very expansive, much more protective wage and hour scheme. Yes? Yes. All right. So if we have to look for a gap in federal law, because the United States Supreme Court has said federal law applies on the shelf except where there's a gap, how do we know what is a substantial gap? Where would we draw that line? Do we look just for California's more protective places where it's more a true void? What is it we should look for? I think there's two scenarios in where the state law would fill in. First is if the federal statute, the statute itself, does not address an issue. The Lands Act?  If there's a federal law like the FLSA. Oh, the Fair Labor Standards Act. Okay. All right. If the FLSA doesn't touch on an issue. Like, for example, FLSA. Pay stubs. They don't say anything about pay stubs. Exactly. Or meal periods. Okay. But they say, this is to Judge Berzon's point, the federal scheme, I think, doesn't say you have to give an employee a pay stub, but it does have a federal record-keeping requirement for employers. Right? Correct. So it's not a void, but California is much more specific, I think it's fair to say. What do we do with that? I would say it is a void. The standards are different. Whether an employer has to keep records of hours worked under the FLSA is different from the employer having to provide a paycheck stub to the employee that lists the information required by California Labor Code Section 226, the name and address of the employer, the number of hours worked, the rates of pay, et cetera. Can we turn to a different provision that seems to me to be what the case is about? What about the hours worked over time? Because there's a 14-day hitch, a period of time where a worker goes out there and has to stay out there, but he or she is not really on duty and isn't paid for all of those hours. I don't think the Fair Labor Standards Act speaks to that, those breaks, certainly not in the way the California law does. Certainly not. The FLSA does not define hours worked in the same way that California does. Right. It talks about how you have to pay for hours that are worked, but doesn't necessarily help us with this problem of what about the other 12 hours of the day? Well, here's the distinction. Okay. The FLSA defines hours worked as excluding certain things, like prep time. Yes. It does not set a limit on what hours worked can include. Yeah. I think we're saying the same thing. So what do we do with that? Do you think that's a substantial enough gap? Yes. Okay. If that's the case and you're going to do this claim by claim, it strikes me as a very difficult scheme to apply if we're going to apply state law sometimes and federal law sometimes, claim by claim in a wage and hour dispute. What is your response to that? My response is that the law is the law. If the law applies, we need to apply it. So if the state law applies, even if it's a little minor state law, it would still need to apply. The Supreme Court in Red Rig was very concerned with they didn't want national uniformity of law, and the court recognized that the fact that the employees working on the platforms commute to the adjacent state lends credence to the belief that the law should be consistent between the adjacent state and the platform, because that's a law that the workers and their attorneys are familiar with. Yes, but if that had really been – it's all sort of a spectrum. They didn't say just apply California law out there. They said federal law is the exclusive law, and we're going to adopt California law as the surrogate when there's a substantial gap. So it's not quite as black and white as you're making it sound. Does it matter that here the federal law itself recognizes state law, or in other words, or at least permits state law to operate? I think that's critical. So in some ways, one doesn't even have to – one can simply say you are applying the federal law, and the federal law is the one that permits the FLSA. I mean, I'm just uncomfortable with all this gap searching. I mean, the fact is that here you have a statute of the FLSA, which itself recognizes the application of state law in certain circumstances. So it isn't – it doesn't purport to be governing everything. And so all one in some ways has to do is apply the federal law, which then says that the state law can come in. And I don't know – I mean, it seems a situation that wasn't contemplated in Rodrigue or the other Supreme Court cases, where you have a federal statute that itself recognizes the role of state law. In – very briefly, in the Fontenot case, I discussed how the Longshoremen Act. In which case? I'm sorry. The Fontenot case. Okay. Out of the Fifth Circuit. The Longshoremen Act. If you look at the Nations v. Morris case, applying the continental oil standard, the Fifth Circuit held that no state injury law could apply in the face of the Longshoremen Act because it was the exclusive remedy. In 1999, the Fontenot case, they identified a gap, and that was that an employee could bring an action against someone who wasn't the employer or another employee. Because Section 933 of the Longshoremen Act specifically contemplates that state law can be brought – a state law claim can be brought against a third party. So there is a gap. Well, the gap there was different. The act, Federal Workers' Comp, basically allowed the third-party action. What they didn't have is anything that spoke to how to allocate faults. So they looked to a Louisiana law and filled that gap, right? Yes. Yes. And so your point about that is what? Is that the Longshoremen Act left open the door for state regulation. Same thing is happening under the FLSA. The FLSA leaves the door open for state regulation that's greater than the FLSA. Because of the savings clause? Yes. Okay. I think your time is up, so let's hear from the other side. Good morning, Your Honors. May it please the Court. My name is Ron Holland on behalf of Parker Drilling Management Services. The Court has identified the issue. There's been much question about what is the standard and where does the standard of gaps and voids come from. Well, it's not in the statute. It's not in the statute, no. Necessity is not in the statute. Gap's not in the statute. No, it's in the legislative history. And that's where the Court is getting at. Well, but that was at the time they were adopting the Outer Continental Shelf statute. Correct. Right? Because at that time it used to apply admiralty law, and that's where the gaps were created. Well, in fact, the legislative law didn't deal with many of these problems that we're confronted with here. That's what the Court was talking about when they talked about gap. They needed a piece of legislation to fill those gaps, especially when they even point to the fact that you have workers working on those man-made islands. And State laws go back and forth. And the admiralty law and the law that existed at that time didn't really apply. And that's exactly right. And so they came up with the Outer Continental Shelf Act. In fact, a specific reason for this was fair labor standards statutes. That's exactly right, Your Honor. So in the congressional record, I believe it's at 99, Congressional Record 6963, there's a question, there's dialogue about should we just import admiralty law. And Congress recognized that if you do import admiralty law, you don't import all of what they call the so-called social law. Right, that's correct. And so specifically they wanted to incorporate the Fair Labor Standards Act. So why would you then incorporate the Fair Labor Standards Act in a way that the Fair Labor Standards Act does not otherwise function? In other words, the Fair Labor Standards Act is not a stand-alone statute. It specifically, in its savings clause, recognizes the role of State regulation. So now what you want to do is incorporate half of the Fair Labor Standards Act. Well, that's not true, Your Honor. First I would say that Congress didn't incorporate specifically the FLSA, because there are quite a few other Federal laws that existed at the time. So instead they incorporated the whole body of Federal law at the time. But this is a Federal law that does not stand alone. It isn't meant to. And if you want to start talking gaps in that sense, it assumes a gap. That's why it's not meant to, because it assumes that it's only a modest regulation that recognizes there's a gap, i.e., that there might be more stringent regulation. Well, I would disagree, because I wouldn't say that that's a gap. The fact is that the Court, the Ninth Circuit, has recognized that the FLSA is a comprehensive wage and hour scheme covering overtime hours and minimum hours of work. But that's in a very different context. The case law you cite for that is a really different case. Your Honor, I guess what I would say is that the FLSA doesn't contain gaps. It contains a savings clause that allows the States to regulate above what it's already regulated. To be more protective, yes. To be more protective. That's not a gap. That's extra. I agree. I agree. That's not the problem I have with your argument. Go ahead. I don't want to interrupt Judge Berzon. So in terms of the, aside from the fact that the language doesn't have any of this, in terms of what do you think applicable means, by the way? I would say that because it's Federal-exclusive jurisdiction, applicable means State law will apply if there is no Federal law. It doesn't say that. No, it doesn't say it. Congress said that that's what it meant. And so Congress said that's what it meant. It did. It did in the legislative history, and we've quoted it extensively in our brief. That's why Rodrigue and Gulf Oil come to the same conclusion. That's why they come to the conclusion that there must be gaps or voids before State law would apply. They didn't pull it out of thin air. They pulled it out of the legislative history, which makes sense. Well, I'm not sure I read Rodrigue in the other case. What's the name of the other case? Gulf Offshore. Gulf Offshore. Gulf Offshore is requiring gaps. I think all that gap discussion relates back to when they adopted the Outer Continental Shelf Act. They were trying to fill gaps in the law that existed at that time, and to do that, they say we're going to apply to the extent they say Federal law applies to these areas, right? Right. And then they go on to say to the extent that they are applicable and not inconsistent. Correct. It seems to me the focus should be on whether or not California's wage and hour laws are inconsistent with FSLA in this context. I would say that it is a two-step process. The question is whether California law is required or needed here. Does Federal law apply? The necessary language really does only come from the Fifth Circuit. The United States Supreme Court hasn't used that word. That's true, Your Honor. I would read gaps void to include necessity. They surrogate. Okay. So just on that point again, I mean, you're being a little ‑‑ let's just be a little more specific. Okay. The United States Supreme Court started with void, and it has moved. That language has changed now to substantial gaps. So even if we're talking about gaps, it's certainly morphed. And they have not most recently have not used the word void. And it really kind of ‑‑ to me, that begs the question that Judge Berzon is getting at. We're talking about a statute. The Fair Labor Standards Act is such a unique animal. It seems to be really an inherent part of a problem for your argument. Well, I'm not sure that it ‑‑ well, it is a problem for my argument because you've said that it's a problem for my argument. But I'm not sure that I would agree. I would say that the Federal ‑‑ the Fair Labor Standards Act is a fairly comprehensive act and covers each of the claims at issue here. Indeed, the claims ‑‑ It says something about each of the claims, right? Well, if we can go back to the complaint for a second, the complaint at paragraph 12, the operative paragraph of the complaint, has to do with these extra 12 hours, these on‑call hours. Right. There's no doubt that Mendiola, the case that is cited in the complaint and the decision of the California Supreme Court, is in conflict with the FLSA interpretation. There's no doubt it's inconsistent. If it's in conflict, then it's inconsistent and it doesn't apply, but we're not getting to the merits here. I mean, you may win on the merits, but that's a different question. If it, in fact, is inconsistent, then you'll win. That's true, Your Honor. Yes, it is true. That's why we go back to the standard and what the appropriate standard is. And so what we've got is the two Supreme Court cases. We've got a fairly healthy body of Fifth Circuit law. We've got Oppen v. Etta Insurance, 1973, out of this circuit. Very different case. Different case, but Indicta adopts the standard. And I would agree that the issue before the court is one of first impression under Oxley. There's no doubt. Nothing like it. There's nothing like it. But there's very persuasive authority that this is a two‑step process, that applicable means in the absence of federal law. Let me ask you, counsel, what is your strongest authority for that point that's not a Fifth Circuit authority? Voids. Voids in the law under Rodriguez. Yeah, under Rodriguez. And, again, the Supreme Court, although it's a 1969, I believe, decision, they just didn't pull that out of thin air. And that's why this issue hasn't been litigated time and time again. But, you know, the other thing they talk about in legislative history is that Congress was saying, look, these workers are closely affiliated with, in this case, California or Louisiana, the shore, you know, where they were presumably living and residing. And so they didn't do a bright line. They didn't just say federal law is going to be exclusive out there. Well, no, but they didn't import State law. In fact, that was part of the congressional dialogue. Should we just import State law because they're so closely aligned? And Congress decided, no, this is exclusive federal jurisdiction, so we're not going to incorporate State law. And so, for example, if the FLSA didn't have the Savings Clause and was otherwise preemptive of State law, then State law would not apply because it would not be applicable. But it is otherwise applicable. And in this instance, i.e., California law may apply in California to these circumstances. It may not because it may be with not within the Savings Clause, but we're not there yet, as I understand that question. I would say that the Savings Clause is actually trumped by OXLA. OXLA is a statute later in time. The Savings Clause existed. Well, that's really the point. I mean, that's a good focus in the sense that that's really our question. And so because OXLA says, right, the language of OXLA is that federal law will apply. This is exclusive federal jurisdiction. Federal law will apply. And then the Court goes on to interpret whether there's applicable or inconsistent State law. And so federal law is exclusively supposed to apply. You stop there. I realize that there's a Savings Clause. There's a Savings Clause in many statutes that are passed along the Federal Government. But here, the Savings Clause is trumped by the specific jurisdictional or choice of law language in OXLA. What about the underlying policy, as I understand it, which is that you have California employees who are protected ordinarily by California law going out to these oil rigs periodically and coming back. And as I understand it, the concern was that the states should be able to protect these employees, as they usually do, or that State law should be incorporated into federal law to protect the employees differentially. In other words, it was meant to be nonuniform, depending on, and that's why they describe which State law would be incorporated. So what you're arguing for is a scheme in which these California-based workers are covered by California law, you know, once they get off this rig and get on the boat, as I understand it, but not before that. Well, I would argue, actually, that whether it's traveling to the rig or not, OXLA's breath is arising out of or in connection with operations on the Outer Continental Shelf. And so with regard to the... What about the Aubrey case? Wouldn't that make it applicable to the people while, wouldn't the Aubrey case make this out of or in connection with operations on the OCS? Clearly, getting these workers from the shore to the rig, whether by helicopter or boat, is critical and in connection with or arises out of the operations on the OCS. So if these people are sent back for the day to go do something on shore, then California law applies? If they're sent back for lack of work? For anything. For any duty driven, any duty. Pick up supplies. I would, yes, I would say that OXLA, the jurisdictional provision of OXLA is broad enough that it would apply to all conduct in connection with or arising out of the operation of that OCS. Really? So if they're sent back to the port to work for a day picking up supplies and organizing things, the California law doesn't apply? Well, in this particular case, Your Honor, if they were sent back to work on shore for a full day, that might take them out of the stream of arising in connection with because there are workers with this company that do specialize in working solely on shore. And so to the extent that they aligned with those workers and were performing that particular job for a day on shore, we might have a different set of facts, but we don't have those facts here. What we have is specifically the workers who are working on the platform. The question is what does Congress mean to be doing here with regard to protecting California based employees differently than they would be if they were in California? Congress, my interpretation of this is Congress took this out of your traditional federal enclave analysis by the OCSLA statute. By the OCSLA statute and the granting of or the expression of which law should apply and the congressional history of how that was considered, OCSLA says federal law is going to apply exclusively unless there's something wrong with federal law. But that's very nice, but it's not what the statute says. To the extent they are applicable and not inconsistent, that's what the statute says. State law is declared to be the law of the United States. I do understand, Your Honor, that that's what the statute says. It goes on to say that state law will essentially be adopted as federal law, which implies that there is no federal law, so we need state law to supplant. No, you go back to the extent that they are applicable. Right. And if federal law applies, if there is federal law, then there is no state law that's applicable. They are applicable refers to state law, not federal law. If you interpret the statute that way, you essentially swallow up the rule. I mean, state law is... No, because the focus is on inconsistent. Is the state law inconsistent with the applicable law? Because that's where the limitation is. It's applicable and inconsistent, so we have to give meaning to applicable. If you don't give meaning to applicable, then you're writing it out of the statute. The meaning of applicable is the ordinary meaning of applicable, i.e., or this is a posit anyway, does under state law, does the state law actually apply to this? And the answer is no, because it's exclusive federal jurisdiction and federal law applies. Where does it say? What it actually says in one is the Constitution laws in civil and political are extended to the same extent as if the outer continental shelf were an area of exclusive federal jurisdiction located within a state. And you say that's different from federal enclave. It's different because with subsection 2, it has more room for state law, not less, doesn't it? In other words, as I understand federal enclave law, the state law has to have existed at the time it became a federal enclave. Correct. This doesn't have that limitation. No, it has a different limitation, which says exclusively federal law will apply at the time the Fair Labor Standards Act did exist. And so federal law will apply unless there's some sort of absence. Okay, well, we got you. Let's see if Judge... You guys are tough this morning. I don't have any further questions. Anything else? No. All right, rebuttal. I'll give you a minute. I'll be very brief. The Tallentire case, Supreme Court, offshore logistics versus Tallentire. The issue was whether the OXLA applied when some folks who were being ferried out to one of the oil platforms died in a helicopter accident. Supreme Court held that OXLA does not apply for that time period where they're commuting from the shore. So that answers that question. The closest case we have here, and admittedly it's a federal enclave case and it's a district court case, is the Korndobler decision, which said that... And it analyzed whether state law would exist on a federal enclave, and it used the savings clause in the same way that plaintiffs would use a savings clause in this case to find that the state minimum wage law is not in conflict or inconsistent with the federal minimum wage law, and therefore it would apply on a federal enclave. Could I ask you something? This is not our direct problem now, but I thought that California minimum wage law essentially operated through wage orders. Is there a wage order that's applicable here? Yes. Which one is it? 16. What? 16. What does it cover? The drilling and logging industries. I see. And it's from that that you're getting the 12-hour issue, i.e. the sleeping coverage for sleeping? Mendiola did not address wage order 16, but the language that Mendiola discussed was the same language that exists in wage order 16, or essentially the same language. So, yes, the Mendiola rule would apply under wage order 16 to the same extent it did under the wage order, in effect, in Mendiola. And just so I orient myself accurately, the Federal FLSA does not have a specific provision, but it's been interpreted by these things that you're saying don't apply, but whatever they are, the Federal Government believes that under Federal law that these people do not have to be paid for that time, as far as Federal law is concerned, unless State law is otherwise. Is that right? That would be the Federal, what I would say would be the Federal common law rule, yes. It's not a common law rule. It's an interpretation of a statute. I don't know why you're calling it a common law rule. Interestingly, in the Gulf Shore case, the Supreme Court hit it at that very issue. And the question was whether the Texas law was inconsistent with Federal law. And it said, do we have to decide now whether a statutory provision under Federal, whether a Federal common law decision interpreting a Federal statute was inconsistent with the State law. And it said, and it basically got to that issue, and then it said, well, we're not going to discuss it now. We're going to send it back to Texas and let them decide whether the law is inconsistent. So this issue is right, whether a State law can be inconsistent with a Federal common law. At any rate, you don't have any argument, and you're not making any argument, that under Federal law there would be any such requirement. Under Federal law, it's interesting. If you apply the rule under Brigham that the Ninth Circuit adopted in Brigham, the factors that were used in Brigham to determine whether the time was compensable are the same exact factors used by the Mandiola court to determine whether the time was compensable. All Mandiola said was, we're not going to adopt the Federal regulation that the Brigham court used to interpret the FLSA. That's the only difference between those two cases. Okay. Okay. Anything else? That's it. Thank you. Thank you, counsel. Interesting case. Sanchez-Ritchie v. Sempra Energy.
judges: Paez, Berzon, Christen